# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| HILDA L. SOLIS, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-cv-174 |
| | ) | (Phillips) |
| RICARDO MAGANA, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER TO ENFORCE SETTLEMENT AGREEMENT

This matter is before the court on the following motions:

- Motion to Enforce Settlement Agreement [Doc. 38];

- Motion for Summary Judgment [Doc. 40];

- Motion for Leave to File Response [Doc. 49]; and

- Motion for Limited Strike [Doc. 50]

Based upon the following, the court will enforce the settlement agreement between the parties, which was complete on January 14, 2009. Accordingly, this case is **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

On May 3, 2007, the Secretary of the United States Department of Labor (hereafter, the "Secretary") brought this action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.* The Secretary seeks a permanent injunction precluding defendants- who are involved

1

in the restaurant business- from violating the minimum wage, overtime, record-keeping, and discrimination provisions of the FLSA. 29 U.S.C. §§ 206, 207, 211, 215(a)(2), 215(a)(3), 215(a)(5). The Secretary also seeks backwages for the employees who were allegedly underpaid.

In December 2008, the parties entered into settlement negotiations. This included written correspondence between counsel for the parties, meetings conducted at the office of the Ritchie Law Firm, P.C. (the law firm representing the defendants), in Knoxville, Tennessee, and telephone conversations between counsel for the parties. On December 19, 2008, the defendants held a settlement meeting, during which they offered to pay $180,000 as settlement for the backwages. The defendants offered to pay the backwages in three installments: (1) $80,000 to be paid on January 31, 2009; (2) $50,000 to be paid on June 1, 2009; and (3) $50,000 to be paid on December 30, 2009. During this meeting, the defendants also agreed that they would be subject to a permanent injunction.

During the first week of January, the Secretary's counsel orally accepted the defendants' offer of $180,000. This was done during a telephone conversation. The parties agreed that the Secretary would prepare the Agreed Order of Permanent Injunction, which would include the terms that were orally agreed upon during the meeting on December 19, 2008.

On January 13, 2009, counsel for the defendants sent a letter confirming the settlement agreement. As part of the letter, the defendants requested a change in the payment schedule:

> We are writing regarding the settlement of the above referenced matter. Pursuant [to] our recent telephone conversation, we understand that your client has accepted the Defendants' most recent settlement offer, which includes the payment of One Hundred Eighty Thousand Dollars ($180,000) to be paid in three separate installments over the course of a year. We also understand that you are in the process of drafting a Permanent Injunction, which will detail the procedure for making the settlement payments. Due to certain year-end monetary obligations of the defendants, our clients request that the three

installments be paid in the following manner:

1.      $50,000.00 on or before January 30, 2009

2.      $80,000.00 on or before June 30, 2009

3.      $50,000 on or before December 30, 2009

[Doc. 39-2, Letter from Defendants Sent to Plaintiff's Counsel on January 13, 2009]. Defendants did not request to change the amount due in backwages ($180,000), just the payment schedule. On January 14, 2009, plaintiff submitted a revised Agreed Order of Permanent Injunction to the defendants' counsel, in which plaintiff agreed to the change in payment schedule. [Doc. 39-3].

On February 24, 2009- more than a month later- Esti Gomez contacted counsel for the plaintiff. Ms. Gomez is a business consultant for the Monterey Mexican restaurants that are owned in part by defendant Ricardo Magana's father. Ms. Gomez informed plaintiffs that she wanted to schedule a meeting to discuss the payment of the backwages due under the settlement agreement. Plaintiff told Ms. Gomez that she would have to contact defendants' counsel to discuss this matter.

On March 30, 2009, defendants' counsel (along with Ms. Gomez, who was not their attorney, but merely a business consultant) met with plaintiff's counsel. During the meeting, the parties confirmed that a valid settlement agreement existed between them.

Months later, defendants submitted additional offers relating to the backwages. For example, on July 10, 2009, defendants offered to revise the monetary portion of the settlement by paying twenty (20) consecutive monthly payments of $5,000.00, for a total of $100,000.00.

Plaintiff states that defendants have not complied with the backwage payment provisions of the settlement agreement. Plaintiff requests that the court enforce the settlement agreement with the terms that were agreed upon on January 14, 2009. [Doc. 39]. Defendants argue that the court should

not enforce the settlement agreement because not all material terms were agreed upon. [Doc. 44].

## II. ANALYSIS

It is well settled law that district courts have the power to enforce settlement agreements. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992), *cert denied*, 113 S.Ct. 194 (1992). "It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976), *cert denied*, 429 U.S. 862, 97 S.Ct. 165 (1976).

A federal court possesses this power "even if that agreement has not been reduced to writing." *Bowater N. Am. Corp v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985). This power extends to enforcing oral settlement agreements, "which are made off the record and not in the presence of the court." *Graley v. Yellow Freight System, Inc.*, 221 F.3d 1334, at *4 (6th Cir. 2000) (citing *Aro Corp.*, 531 F.2d at 1372). In *Brock v. Scheuner Corporation*, the Sixth Circuit decided to enforce an oral settlement agreement between the Secretary of Labor and defendants who allegedly violated the FLSA.

In *Brock*, the Secretary sued defendants for allegedly violating the wage and hour provisions of the FLSA. *Id.* at 154. The defendants, who were involved in the restaurant and food service business, had allegedly underpaid its employees in violation of 29 U.S.C. § 217. *Id.* In his complaint, the Secretary sought injunctive relief and back wages for the employees who were allegedly underpaid. *Id.*

Soon after, the parties engaged in settlement negotiations. *Id.* During a telephone conversation, the parties agreed that the matter should be settled by entering a consent judgment. *Id.* The defendants agreed that they would be enjoined from committing future violations of the

4

FLSA. *Id*. In addition, the defendants agreed to pay backwages for its employees. *Id*. at 152-53.

The Secretary then mailed a draft of the consent judgment to counsel for the defendants. *Id*. In this draft, the Secretary included a provision that the defendants had not agreed to. *Id*. The defendants had not agreed how the installment payments would be made: whether defendants would use certified/cashier's checks, or whether they would use a draft drawn from the defendant's bank account. *Id*. The defendants objected to this addition, and refused to sign the Secretary's draft of the agreement. *Id*.

The Secretary then moved the district court to enforce the settlement agreement. *Id*. The defendants responded by arguing that the settlement agreement was not complete. *Id*. The district court found that an agreement was reached between the parties. *Id*. The defendants then appealed to the Sixth Circuit, arguing that the district court erred in enforcing the settlement agreement. *Id*.

The Sixth Circuit held that the parties reached an agreement on all material terms. *Id*. In particular, the defendants agreed to: (1) pay a sum certain in backwages; and (2) be enjoined from committing future FLSA violations. *Id*. The court held that the manner in which payments were to be made (whether the installment payments would be paid from a cashier's check or bank draft) was not a "material term." *Id*.

Before enforcing settlement agreements, the district court must conclude that the parties have agreed on all material terms. *Id*. at 154. In *Therma-Scan, Inc. v. Thermoscan, Inc.*, the Sixth Circuit explained that heated debates during settlement negotiations regarding a term suggests that the parties did not reach agreement on that term: "These reasonable differences in interpretation manifested themselves in heated debate during the drafting process, a situation that highlights the disagreement between the parties and the obvious materiality of the disputed term." 217 F.3d 414, 420 (6th Cir.

2000).

In the present case, defendants argue that they did not reach agreement on all material terms. The facts suggest otherwise. By January 14, 2009, defendants had agreed upon the amount to be paid in backwages, and how it would be paid (the schedule of the installment payments). In addition, defendants agreed to enjoin themselves from committing future FLSA violations.

Defendants argue that the settlement agreement was not complete on January 14, 2009, and that negotiations were still underway. However, it was not until months later that defendants informed plaintiff that they wanted to change the amount to be paid in backwages:

> Defendants' financial situation continued to decline so that Defendants have been unable to procure the payments originally offered to be paid in three installments over the period of a year. Defendants have instructed Defendants' counsel to re-open settlement negotiations to provide for smaller monthly payments over a longer period of time in order to settle the claims against the Defendants. Defendants' counsel communicated this information to Plaintiff's counsel by letter of April 6, 2009 . . .

[Doc. 44-1, Affidavit of Ricardo Magana]. This is more than three months after they reached agreement on January 14, 2009, regarding all material terms of the settlement. Defendants characterize the letter sent on April 6, 2009, as "re-opening" settlement negotiations. Defendants misunderstand the nature of settlement agreements. You cannot "re-open" settlement negotiations if an agreement was already complete. All material terms were agreed upon by January 14, 2009, and the settlement agreement was enforceable at that time.

In addition, defendants blame their failure to comply with the settlement agreement on the economic recession:

> However, consistent with the effects of the national economic crisis, Defendants' financial ability to pay the large payment installments continued to deteriorate, which has resulted in Defendants being unable to procure the large payment installments. When it became apparent that the Defendants

> would be unable to satisfy the monetary terms of the settlement, *the Defendants requested counsel to re-open settlement negotiations based on the changed circumstances*.

[Doc. 44 at 2-3] [emphasis added]. Defendants' reasoning contradicts itself. At one point, defendants argue that settlement negotiations were still ongoing, and therefore a settlement agreement was not reached. At another point, defendants admit that a settlement agreement was reached, but that they could not comply with it: "Defendants are unable to procure adequate funds to comply with the *previously agreed upon monetary terms of settlement*." [Doc. 44-1 at 3] [emphasis added]. Essentially, defendants are trying to escape their financial responsibilities by blaming it on the economic recession. An employer's economic hardship is not a valid ground for opposing the entry of an order relating to FLSA violations. *See Wirtz v. Flame Coal Co.*, 321 F.2d 558 (6th Cir. 1963) (holding that a district court abused its discretion in failing to issue an injunction based upon a mining operation's argument that economic hardship would result if it was forced to comply with the FLSA).

Finally, defendants ask "this court to set aside the monetary settlement terms and to reform the monetary terms of settlement to an amount which Defendants are able to pay." [Doc. 44 at 3]. Defendants misunderstand the role of courts in the settlement process. Courts do not change the terms of a settlement agreement; their job is to decide whether to enforce an agreement, not amend it. "The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154.

Accordingly, the court will enforce the settlement agreement between the parties, as agreed upon on January 14, 2009, and memorialized in Doc. 39-3.

## III. CONCLUSION

It is hereby **ORDERED** that defendants comply with the terms of the settlement agreement, which was finalized on January 14, 2009, and memorialized as the proposed Agreed Order of Permanent Injunction [Doc. 39-3]. **Defendants are ORDERED to abide by the requirements in Doc. 39-3.** Having decided to enforce the settlement agreement, as memorialized in Doc. 39-3, this case is **DISMISSED WITH PREJUDICE.** Accordingly, the court makes the following rulings:

- Motion to Enforce Settlement Agreement [Doc. 38] is **GRANTED**.

- Motion for Summary Judgment [Doc. 40] is **DENIED AS MOOT**.

- Motion for Leave to File Response [Doc. 49] is **DENIED AS MOOT**.

- Motion for Limited Strike [Doc. 50] is **DENIED AS MOOT**.

**IT IS SO ORDERED**.


**ENTER:**


        s/ Thomas W. Phillips
        United States District Judge